IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MICHEAL WILLIAMS**                                                                 **PLAINTIFF**

**v.**                                    **Case No. 4:26-cv-00343-LPR**

**PINE BLUFF SCHOOL DISTRICT;**
**JENNIFER BARBAREE,** *in her Official*
*capacity as Superintendent of the Pine Bluff*
*School District***; ARNOLD ROBERTSON,**
**JR.,** *in his Individual capacity and in his*
*Official capacity***; RICKY WHITMORE,**
**JR.,** *in his Individual capacity and in his*
*Official capacity***; PATRICK LOCKETT,** *in*
*his Individual capacity and in his Official*
*capacity***; CHARLES COLEN, JR.,** *in his*
*Individual capacity and in his Official*
*capacity***; SEDERICK CHARLES RICE,** *in*
*his Individual capacity and in his Official*
*capacity***; CHRISTEN SHELTON-FARRIS,**
*in her Individual capacity and in her Official*
*capacity***; and BONITA CORBIN,** *in her*
*Individual capacity and in her Official*
*capacity*                                                                             **DEFENDANTS**

**ORDER**

This Order addresses Plaintiff's pending Motion for a Preliminary Injunction.[1]  That

Motion is focused on (1) whether Plaintiff has a constitutional right to a name-clearing hearing in

the circumstances of this case, and (2) if so, whether Defendants have violated or are about to

violate that constitutional right.[2]  Both parties have made clear their desire for a quick disposition

of this Motion.[3]  Accordingly, to save time, the Court will forego its usual detailed factual

---

[1] *See* Pl.'s Emergency Mot. for TRO and Prelim. Inj. (Doc. 2).

[2] *See id.* at 4–6; Pl.'s Br. in Supp. of Pl.'s Emergency Mot. for TRO and Prelim. Inj. (Doc. 3) at 1–11.

[3] Plaintiff sought a temporary restraining order, indicating a desire for preliminary relief as fast as possible.  *See* Pl.'s Emergency Mot. for TRO and Prelim. Inj. (Doc. 2) at 6; Pl.'s Br. in Supp. of Pl.'s Emergency Mot. for TRO and Prelim. Inj. (Doc. 3) at 13–14.  Defendants have recently requested the Court issue a ruling in short order.  *See* Defs.' May 29, 2026 Letter (Doc. 49) at 2 ("To the extent any relief is being sought, it is simply that the Court proceed to issue an order addressing the pending injunctive relief.  Even a brief text order – with a more comprehensive ruling to

background section.  Instead, this Order assumes familiarity with the general background relevant to the issues discussed herein.[4]  For several reasons, the Court DENIES the Motion for Preliminary Injunction.

The first reason is one of timing.  Plaintiff claims a right to name-clearing hearing because, according to Plaintiff, Defendants publicized stigmatizing statements concerning Plaintiff and took adverse employment action against him.[5]  But the alleged publication of stigmatizing statements and the alleged adverse employment action occurred in early October of 2025.[6]  Plaintiff did not file his Complaint and preliminary relief Motion until six months later, in early April of 2025.[7]  Plaintiff says the delay is justifiable because he was pursuing internal remedies with Defendants in the interim.[8]  The problem with this contention is that those internal remedies had clearly run their course by the beginning of February 2026.[9]  And yet Plaintiff sat on his (claimed) rights for more than two additional months before seeking preliminary relief.  The Eighth Circuit has made clear that this type of delay can justify denial of preliminary relief.[10]

---

follow at the Court's convenience – would go a long way toward relieving the Board of the ongoing disruption that Mr. Williams and his counsel continue to visit upon its governance.").

[4] Wherever the Court is expressly or indirectly relying on a particular version of a disputed fact, the Court has concluded that the fact is supported by a preponderance of the evidence.

[5] *See, e.g.*, Pl.'s Br. in Supp. of Pl.'s Emergency Mot. for TRO and Prelim. Inj. (Doc. 3) at 7–9.

[6] *See* First Am. Verified Compl. at ¶¶ 31–34; Ex. 20 (Aff. of Micheal Williams) to First Am. Verified Compl. (Doc. 34-6) ¶¶ 14–18.

[7] *See* Original Compl. (Doc. 1) (filed on April 7, 2026); Pl.'s Emergency Mot. for TRO and Prelim. Inj. (Doc. 2) (filed on April 7, 2026).

[8] *See* Mot. for Prelim. Inj. Hr'g Tr. (Rough) at 17:02:42–17:04:02.

[9] *See* First Am. Verified Compl. at ¶¶ 42–49, 69; Ex. 14 (Aff. of Micheal Williams) to Pl.'s Notice of Corrected Filing (Doc. 23) ¶ 32.

[10] *Ng v. Bd. of Regents of Univ. of Minnesota*, 64 F.4th 992, 997 (8th Cir. 2023) ("[A]n unreasonable delay in moving for the injunction can undermine a showing of irreparable harm and 'is a sufficient ground to deny a preliminary injunction.'" (quoting *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019))).

The second reason is more substantive.  Plaintiff's claim to a right to a name-clearing hearing is predicated entirely on a line of procedural due process cases from the Supreme Court concerning the liberty interest set out in the Fourteenth Amendment.[11]  Putting aside whether those cases were rightly or wrongly decided and whether the Supreme Court should revisit them, the proper rule statement derived from those cases is that a public employer must provide an employee with a name-clearing hearing when the employer publicizes stigmatizing information about the employee in connection with the employee's termination.[12]  In our case, however, Plaintiff has not been terminated and is not about to be terminated.[13]  He has been placed on administrative leave

---

[11] *See, e.g.*, *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Paul v. Davis*, 424 U.S. 693 (1976); *Codd v. Velger*, 429 U.S. 624 (1977); *Owen v. City of Independence*, 445 U.S. 622 (1980).

[12] *See, e.g.*, *Owen*, 445 U.S. at 633 n.13 ("In *Board of Regents v. Roth*,  . . . we explained that the dismissal of a government employee accompanied by a 'charge against him that might seriously damage his standing and associations in his community' would qualify as something 'the government is doing to him,' so as to trigger the due process right to a hearing at which the employee could refute the charges and publicly clear his name." (internal citations omitted)).  In the Eighth Circuit, "establish[ing] a procedural due process claim against a state employer for deprivation of a protected liberty interest in a public employee's reputation" requires a plaintiff to satisfy the following four elements: "(1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) an alteration or extinguishment of a right or legal status."  *Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009) (quoting *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007)).  It is only fair to note, however, that the concept of termination includes the non-renewal of a contract—at least in this context.  *See Paul*, 424 U.S. at 709 ("While Roth recognized that governmental action defaming an individual in the course of declining to rehire him could entitle the person to notice and an opportunity to be heard as to the defamation, its language is quite inconsistent with any notion that a defamation perpetrated by a government official but unconnected with any refusal to rehire would be actionable under the Fourteenth Amendment . . . .").

[13] *See* Ex. 1 (Decl. of Dr. Jennifer Barbaree) to Defs.' Resp. in Opp'n to Pl.'s Emergency Mot. for TRO and Prelim. Inj. (Doc. 14-1) ¶¶ 2, 5–7 (explaining that Coach Williams "remains employed by the District" and that he "has continued to receive his full contractual salary and benefits"); Ex. 7 (Email from Counsel for the District) to First Am. Verified Compl. (Doc. 34-3) at 1 ("Coach Williams remains on paid administrative leave pending the completion of the ongoing investigation being conducted by the Arkansas Department of Education's Professional Licensure Standards Board. . . .  Coach Williams remains employed by the District and will continue on paid administrative leave pending the completion of [that] investigation.").  The Court takes judicial notice that the Pine Bluff School Board has recently voted to offer Plaintiff a contract for the 2026–2027 school year.  *See* Defs.' May 29, 2026 Letter (Doc. 49) at 2.  *Cf. Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) ("[W]e may take judicial notice of judicial opinions and public records . . . .").  Specifically, the following motion was unanimously approved:

> Move to offer Micheal Williams a contract for the 2026–2027 school year, on the same terms and conditions as his present contract, and to continue his placement on paid administrative leave until the conclusion of any ongoing administrative process by the Arkansas Department of Education. When that process is concluded, and if Mr. Williams' license remains in good standing, Mr. Williams will return to full duties.

(i.e., suspended) with pay pending the outcome of an Arkansas Department of Education investigation and decision concerning Plaintiff's teaching license.[14]

Plaintiff is right that courts have not steadfastly held the termination line. Precedent might well require a name-clearing hearing for suspensions without pay, demotions, or employment actions on par with such actions.[15] But, as far as this Court and the parties can tell, no federal court has ever held that the Constitution requires a name-clearing hearing for suspensions with pay. The Court declines Plaintiff's invitation to become the first federal court to do so. For one thing, further watering down the constitutional trigger for a liberty-based claim regarding stigmatizing statements made by the government seems directly inconsistent with the care the Supreme Court took in *Paul v. Davis* to distinguish a constitutional violation from "mere defamation" of an employee.[16] For another thing, suspensions with pay—especially those pending the outcome of some investigation—neither take away a person's ability to earn a living nor signal an employer's

---

Defs.' May 29, 2026 Letter (Doc. 49) at 2. In his response to this letter, Plaintiff essentially concedes that the School Board's motion offering Plaintiff a contract was passed. *See* Pl.'s June 1, 2026 Letter (Doc. 50) at 2 ("Defendants suggest that the Board's offer of a contract somehow resolves the constitutional concerns presently before the Court. It does not.").

[14] *See* Ex. 1 (Decl. of Dr. Jennifer Barbaree) to Defs.' Resp. in Opp'n to Pl.'s Emergency Mot. for TRO and Prelim. Inj. (Doc. 14-1) ¶¶ 2, 5–7. Plaintiff characterizes the employment action at issue as a suspension with pay. *See, e.g.*, Mot. for Prelim. Inj. Hr'g Tr. (Rough) at 13:32:23–13:33:29. Defendants characterize the same employment action as administrative leave with pay. *See, e.g.*, Mot. for Prelim. Inj. Hr'g Tr. (Rough) at 13:50:20–13:50:49. For purposes of this Order, the Court sees no substantive delta between those two terms. As used in this Order, those terms are interchangeable.

[15] *See Winegar v. Des Moines Indep. Community Sch. Dist.*, 20 F.3d 895, 901 (8th Cir. 1994) ("Under the circumstances, Winegar has demonstrated a weighty private interest in retention of his job, his assignment, and his good name that are adversely affected by the School District's official actions of suspension and punitive transfer."); *Hughes v. Whitmer*, 714 F.2d 1407, 1417 (8th Cir. 1983) ("We . . . hold that the 'internal transfer of an employee, *unless it constitutes such a change of status as to be regarded essentially as a loss of employment*, does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the fourteenth amendment.'" (emphasis added) (quoting *Moore v. Otero*, 557 F.2d 435, 438 (5th Cir. 1977))).

[16] *See Paul*, 424 U.S. at 706 ("[T]he Court has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment.").

4

belief in the stigmatizing allegations.  This makes suspensions with pay categorically different than terminations, suspensions without pay, demotions, or the like.

The third reason is the incredibly small marginal benefit that a name-clearing hearing would, at this point, provide to Plaintiff.  In theory, there are two possible benefits of a name-clearing hearing.  The hearing could convince decisionmakers that an employee did not do what he is alleged to have done or that, for some other reason, the decisionmaker should not take—or should rescind—a certain employment action.  Even if the hearing doesn't accomplish that goal, the hearing allows an employee to tell his side of the story, such that others in the public might believe him and thus disbelieve some or all of the (allegedly) stigmatizing statements (allegedly) publicized about him.  In the case at bar, neither of the theoretical benefits are of much practical use to Plaintiff.

As to convincing the decisionmakers not to take a specific action or to reverse course, the School Board has been clear that (1) Plaintiff will remain suspended with pay pending the conclusion of the ongoing Arkansas Department of Education investigation, and (2) the School Board will honor the outcome of the Arkansas Department of Education investigation by returning Plaintiff to full duties after the investigation is complete so long as Plaintiff's teaching license remains in good standing.[17]  Given the allegations pending against Plaintiff, the Court is convinced that there is no chance the School Board will lift his suspension with pay until the Arkansas Department of Education's investigation is complete.  Moreover, the Court notes that the Arkansas Department of Education is—in July of 2026—affording Plaintiff an opportunity for a hearing

---

[17] *See* Defs.' May 29, 2026 Letter (Doc. 49) at 2.

where Plaintiff can try to persuade the Arkansas Department of Education as to what the true facts are and what the appropriate outcome of its investigation should be.[18]

As to having a chance to tell his side of the story, Plaintiff was given that opportunity (and used it) in open court. During the Preliminary Injunction Hearing, the Court allowed Plaintiff to fully explain his side of the story—and rebut any (allegedly) stigmatizing statements (allegedly) made against him—with no time limits.[19] The Court allowed Plaintiff's counsel the opportunity to ask Plaintiff questions to elicit Plaintiff's full story.[20] Like Plaintiff, Plaintiff's counsel used this opportunity.[21] The Courtroom was open to the public. Members of the public were present. The transcript is public and available for ordering by the parties, media, or other members of the public. Plaintiff's testimony was given under oath, which makes it more powerful than unsworn statements Plaintiff might make at a name-clearing hearing.[22] The Court can hardly think of a better forum to give Plaintiff the opportunity to tell his side of the story, such that others in the public might believe him and thus disbelieve some or all of the (allegedly) stigmatizing statements (allegedly) publicized about him.[23]

---

[18] *See* Mot. for Prelim. Inj. Hr'g Tr. (Rough) at 14:36:05–14:36:49, 15:50:01–15:52:07.

[19] *See id.* at 15:24:32–15:36:00.

[20] *See id.* at 15:36:02–15:40:40.

[21] *See id.*

[22] Additionally, the Superintendent of the School District was present and testified. *See id.* at 13:20:25–13:20:32, 14:05:59–14:45:32. That means: (1) the Superintendent heard Plaintiff's side of the story, and (2) Plaintiff's counsel had the opportunity to cross-examine the Superintendent on the allegations in question.

[23] The Court is not suggesting that a preliminary injunction hearing may substitute for a name-clearing hearing as a matter of substantive law. Instead, the Court is suggesting that, as a matter of equity, the Preliminary Injunction Hearing in this case—where the Plaintiff got to tell the world his side of the story regarding the underlying allegations that caused his suspension with pay—reduces the need for emergency relief in the form of a name-clearing hearing to basically zero. This is especially so given that, constitutionally speaking, the name-clearing hearing provided by Defendants could be less open to the public, less formal, and less available to media. *See Christiansen v. West Branch Community Sch. Dist.*, 674 F.3d 927, 936 (8th Cir. 2012) ("[P]re-termination process need not be elaborate to satisfy due process. Indeed, even an informal meeting with supervisors is sufficient where the employee is given notice of the charges, an explanation of the employer's evidence, and an opportunity to respond."). *Cf. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985) ("The foregoing considerations indicate that the pretermination hearing . . . need not be elaborate. We have pointed out that the formality and procedural requisites for the hearing

6

The three reasons set out above counsel the Court to deny the extraordinary relief of a preliminary injunction. Under binding precedent, such decisions must be made considering the *Dataphase* factors.[24] The Court takes them in turn.

1.      Plaintiff has not made out a likelihood of success on the merits. Because Plaintiff is currently suspended with pay—and is not facing imminent termination, non-renewal of a contract, suspension without pay, or demotion—the liberty interest in the Fourteenth Amendment is not triggered even assuming Defendants (or their agents) publicized stigmatizing statements about Plaintiff. Accordingly, Plaintiff lacks even a fair chance of succeeding on his name-clearing-hearing claim.[25]

2.      Plaintiff cannot show that, in the absence of preliminary relief, irreparable injury is likely. Consider the following: (1) Plaintiff significantly delayed bringing a motion for preliminary

---

can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. . . . In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action. . . . The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. . . . The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. . . . To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." (cleaned up) (internal citations and quotation marks omitted)).

[24] *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) ("Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."). The Court will not dwell on whether and how *Winter v. Nat. Res. Def. Council, Inc.* (and its progeny) have tightened up the preliminary injunction standard compared to the *Dataphase* test. In the Court's view, the post-*Winter* Eighth Circuit precedent has not yet fully accounted for this tightening. *Compare Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction *must establish* that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." (emphasis added)), *with Dataphase*, 640 F.2d at 113 ("In balancing the equities no single factor is determinative. The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public. If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less."). But the legal delta makes no difference for the instant Motion. That is because Plaintiff would not be entitled to preliminary relief even under the Eighth Circuit's traditional *Dataphase* framework.

[25] The Court need not and does not answer the questions whether (1) the statements at issue were stigmatizing, and (2) the statements at issue were publicized by Defendants or their agents.

relief; (2) Plaintiff is only suspended with pay; (3) Plaintiff is being offered another contract for next year and will be restored to full duties so long as the Arkansas Department of Education's investigation concludes with Plaintiff's license in good standing; (4) Plaintiff will have the opportunity to participate in a hearing to tell his side of the story to the Arkansas Department of Education; and (5) Plaintiff has already been given the opportunity to tell his side of the story concerning the allegedly stigmatizing allegations in open court.  In these circumstances, either there is no irreparable injury or the injury is so *de minimis* that it would not be mitigated further by a name-clearing hearing.

3.      The balance of harms and public interest factors are—at absolute best for Plaintiff—a wash.  The Court has already explained the incredibly minimal benefit that a name-clearing hearing would be to Plaintiff at this point.  As for the public interest, the Plaintiff's ability to participate in the Arkansas Department of Education hearing will help ensure there is an accurate outcome in this case, and the Plaintiff's ability to tell his side of the story at the Preliminary Injunction Hearing has helped avoid public misconceptions.  Nothing further is needed.  On the other side of the ledger, it is not very hard to provide a name-clearing hearing.  It doesn't cost that much in terms of time and resources.  Of course, there is some harm associated with a federal court involving itself in the personnel decisions of a local school board.  The harm is a dignitary one, a federalism one, and one of a non-educator trying to muck around in an educational arena.  And the public has, generally speaking, an interest in leaving educational calls to the education system.  But this just doesn't move the needle that much.

At bottom, given the lack of a likelihood of success on the merits of the name-clearing-hearing claim, the absence or *de minimis* nature of any irreparable harm that could be remedied by

the requested preliminary relief, and the equipoise of the balance of harm and public interest factors, preliminary relief is not justified here under the *Dataphase* standard.

## CONCLUSION

For the reasons stated above, the Court DENIES the Plaintiff's Motion for Preliminary Injunction (Doc. 2).

IT IS SO ORDERED this 2nd day of June 2026.

                    _____

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE